# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

| | |
|---|---|
| **JERRY VANWAGNER** | **PLAINTIFF** |
| **VERSUS** | **CIVIL ACTION NO. 4:18-CV-150-GAD-RP** |
| **C. FAULKS, ET AL** | **DEFENDANTS** |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Nurse Practitioner Angela Brown ("Nurse Practitioner Brown" or "Defendant") files this Memorandum in Support of her Motion for Summary Judgment. Nurse Practitioner Brown is entitled to summary judgment on the claims against her in this matter because Plaintiff's claims are not properly before the Court, and more importantly, she did not violate Plaintiff's constitutional rights. *First,* Plaintiff did not exhaust his administrative remedies prior to filing suit, and thus, his claims are not ripe for adjudication. *Second*, even if Plaintiff exhausted his administrative remedies, which he did not, Plaintiff has received, and continues to receive, routine monitoring and treatment for his Hepatitis C—a treatment regimen which this Court recently held constitutes adequate medical treatment. As a result, all claims against Nurse Practitioner Brown should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff Jerry Vanwagner ("Plaintiff") is a post-conviction inmate currently housed at Central Mississippi Correctional Facility for aggravated DUI. Nurse Practitioner Brown serves as a nurse practitioner at Mississippi State Penitentiary ("MSP") and is employed by Centurion of Mississippi, LLC, a private company contracted by the Mississippi Department of Corrections

1

("MDOC") to provide medical services for inmates located at MDOC prisons. Nurse Practitioner Angela Brown Decl. at ¶2, attached hereto as Exhibit A. On July 16, 2018, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging inadequate treatment for his Hepatitis C condition. *See* Compl., [Doc. 1]. Plaintiff later amended his Complaint to add Nurse Practitioner Brown, alleging Nurse Practitioner Brown refused to treat his Hepatitis C condition. Am. Compl., [Doc. 13] at pp. 5-6. Plaintiff later clarified his claims at an Omnibus Hearing on January 22, 2019.[1] Plaintiff is proceeding in this action *in forma pauperis*.

Plaintiff, upon information and belief, tested positive for Hepatitis C prior to Centurion becoming the medical contractor at MSP on July 1, 2015. *See* A.Brown Decl. at ¶¶3-5. Since Centurion began providing medical services at MSP, Plaintiff has been enrolled in Chronic Care treatment specific for his Hepatitis C diagnosis. *Id.* at ¶5. While in Chronic Care, medical staff monitor Plaintiff's liver enzyme levels with blood counts and exams to check for signs of disease including ascites (a build-up of fluid in the abdomen) and jaundice. Ex. A at ¶6. Plaintiff has received chronic care services continuously throughout the relevant time period. *See e.g.*, Plaintiff's Relevant Medical Excerpts, attached hereto as Exhibit B, at 770, 785, 813, 854, 908, 964, 1012, 1107, 1144, 1179, 1205, and 1236. Most recently, in addition to receiving a gastroenterologist consult to evaluate his candidacy for further treatment, Plaintiff received an esophagogastroduodenoscopy ("EGD") on August 15, 2019—a scope procedure that examines the esophagus, stomach and first portion of the duodenum (small intestine). Ex. A at ¶10. Each of the aforementioned procedures helps monitor the progression of Plaintiff's condition and determine if

---

[1] A *Spears* hearing, otherwise known as an omnibus hearing, "affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." *Davis v. Scott*, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The hearing "is in the nature of an **amended complaint** or a more definite statement." *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990). It should also be noted that the Omnibus hearing "supersedes" claims made in the complaint. *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir.1987).

further, more aggressive, treatment is needed.

Providing Chronic Care services is the standard form of treatment for Hepatitis C patients so long as the patient's enzyme levels remain under the appropriate threshold. Ex. A at ¶11. The appropriate "threshold" is determined by the patient's Fibrosis-4 score. *Id.* at ¶7. The Fibrosis-4 score is a non-invasive testing method to measure scarring of the liver. *Id.* Once a patient's score approaches or exceeds 2.5, a patient is automatically referred to a specialist for valuation of treatment with anti-viral medications. *Id*. Plaintiff's levels have not reached the necessary threshold for automatic referral as Plaintiff's Fibrosis-4 score most recently registered at 0.85. *Id*. at ¶8. At no point did Plaintiff's enzyme levels demonstrate that his condition worsened, or that he experienced any liver damage. *Id.* at ¶9.

### ARP MSP-18-0636

Plaintiff filed his only ARP related to his Hepatitis C treatment on May 8, 2018, complaining the Medical Director of MSP was denying him treatment of his Hepatitis C condition. *See* Plaintiff's ARP File, attached hereto as Exhibit C, at p. 3. Plaintiff did not name Nurse Practitioner Brown, nor did Plaintiff allege any facts similar to the allegations against Nurse Practitioner Brown contained in his Amended Complaint. *Id*. Instead, Plaintiff specifically identified the MSP Medical Director and limited his grievance to the actions of the medical director. *Id*. Plaintiff's ARP was rejected, and Plaintiff did not submit a second ARP prior to filing suit, or amending his Complaint. *See* Ex. C.

### ARGUMENT

As supported by the record evidence, Plaintiff did not exhaust his administrative remedies as it pertains to Nurse Practitioner Brown, and therefore, his claims are not properly before the Court. Furthermore, even if Plaintiff exhausted his administrative remedies, Plaintiff's medical

3

records confirm Plaintiff received constant and appropriate treatment for his Hepatitis C condition. Since his diagnosis, medical professionals continuously monitored and treated Plaintiff's Hepatitis C. As reflected in the medical records, medical staff has been responsive to Plaintiff's medical requests, not indifferent to them, and the continuous medical treatment of Plaintiff has not violated his constitutional rights.

### I. Summary Judgment Standard.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The rule "mandates the entry of summary judgment … against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party does not have to present proof that negates the opponent's claim. Once the moving party points to an absence of proof on claims as to which the non-movant has the burden of proof at trial, the non-movant must present probative evidence demonstrating the existence of an issue of material fact. *Celotex*, 477 U.S. at 322; *see also Moore v. Miss. Valley State Univ.,* 871 F.2d 545, 549 (5th Cir. 1989). A non-moving party to a motion for summary judgment is not entitled to rely on general allegations or denials, but must come forth with significant probative evidence demonstrating the existence of a triable issue of fact. *Celotex,* 477 U.S. at 324. "After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial." *Campbell v. Brown*, No. 1:15CV35-GHD-DAS, 2017 WL 1030717, at *1 (N.D. Miss. Mar. 15, 2017). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party,

there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir. 2002).

"In considering a motion for summary judgment, a court must determine whether the nonmoving party's allegations are *plausible*." *Campbell*, 2017 WL 1030717, at *1. "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. R 12(b)(6))). "[O]nce the court 'has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law.'" *Id.* at *2 (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment" *Id.*

## II. Plaintiff failed to exhaust his administrative remedies.

Plaintiff failed to exhaust his administrative remedies with respect to his claims against Nurse Practitioner Brown, and thus, they are not ripe for adjudication. Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust any available administrative remedies before filing suit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (discussing the Fifth Circuit's

"strict approach" to the PLRA's exhaustion requirement). "Exhaustion is mandatory, 'irrespective of the forms of relief sought and offered through the administrative avenues.'" *White v. Epps*, No. 3:08-CV-708, 2009 WL 3162126, at *1 (S.D. Miss. Aug. 19, 2009) (citing *Booth v. Churned*, 532 U.S. 731, 739 (2001)). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Mississippi Code Section 47-5-801 grants MDOC the authority "to adopt an administrative review procedure at each of its correctional facilities." Under this statutory authority, the MDOC has set up an ARP through which an offender may seek formal review of a complaint relating to any aspect of their incarceration. *See* MDOC's ARP Policy, attached hereto as Exhibit D. The ARP is a two-step process. Inmates must initially submit their grievances in writing to the Legal Claims Adjudicator within thirty days of the incident. *Id.* If, after screening, a grievance is accepted into the ARP, the request is forwarded to the appropriate official, who will issue a First Step Response. *Id.* If the inmate is unsatisfied with this response, he may continue to the Second Step by using ARP form ARP-2 and sending it to the Legal Claims Adjudicator. A final decision will be made by the Superintendent, Warden, or Community Corrections Director. If the offender is not satisfied with the Second Step Response, he may then file suit in state or federal court. *See id.*; *see also McKinney v. Byrd*, No. 5:12-CV-135, 2013 WL 4500665, *2 n.2 (S.D. Miss. Aug. 21, 2013).

Generally, "a grievance should give prison officials 'fair notice' of the problem that will form the basis of the prisoner's suit." *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (quoting *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003)). When a prisoner's complaint is directed toward a particular employee, "[the] prisoner could ordinarily be expected to provide . . .

details regarding who was involved and when the incident occurred, or at least other information about the incident that would permit an investigation of the matter." *Id*. at 517.

Dismissal is mandatory where a prisoner failed to properly exhaust the available prison grievance process before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Dixon v. Mgmt. & Training Corp.*, No. 3:14-CV-66, 2015 WL 461762, at *1 (S.D. Miss. Feb. 4, 2015) (adopting report and recommendation granting summary judgment for failure to exhaust and entry of a strike under the PLRA's three-strike rule). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Because exhaustion is a threshold issue that must be satisfied and may require a factual determination, the Fifth Circuit has held that "judges may resolve factual disputes concerning exhaustion of remedies" for purposes of summary judgment. *Id.* at 271.

Plaintiff did not exhaust his administrative remedies before filing suit. Although he submitted an ARP (MSP-18-06) related to the Medical Director's treatment of his condition, his ARP complaint is facially deficient for a number of reasons. *See generally* Ex. C. *First*, Plaintiff's Amended Complaint raises issues relating Nurse Practitioner Brown's alleged denial of treatment. [Doc. 13]. But, his ARP complaint fails to identify Nurse Practitioner Brown, nor does it reference any action or inaction by Nurse Practitioner Brown as it relates to treating his Hepatitis C. *See* Ex. C. Instead, his ARP complaint focuses solely on the actions of the Medical Director whom he identified. *Id.* This deficiency operates to deprive prison officials of "a fair opportunity to address the problem[s] that will later form the basis of the lawsuit," *Johnson*, 385 F.3d at 517, which directly contravenes "the goal of giving officials 'time and opportunity' to address complaints internally." *Id*. (quoting *Porter*, 534 U.S. at 525)).

7

*Second*, after MSP-18-06 was rejected, Plaintiff never moved to the second step of the ARP process, as required, before filing suit. Instead, Plaintiff filed his Complaint and Amended Complaint before his claims were fully exhausted. Unexhausted claims cannot be brought in court, so summary judgment is proper on the claims relating to denial of Hepatitis C treatment against Nurse Practitioner Brown for this reason alone. *See Jones v. Bock*, 549 U.S. 199, 211 (2007).

> **III. Even if Plaintiff did exhaust his administrative remedies, which he did not, Plaintiff's constitutional claims still fail as a matter of law because there is no evidence Nurse Practitioner Brown acted with deliberate indifference.**

Plaintiff's Eighth Amendment rights are not violated unless a prison official acts with deliberate indifference to his serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). The test for deliberate indifference is "one of subjective recklessness as used in the criminal law." *Tynes v. Byrd*, 2008 WL 660419 *1 (N.D. Miss. March 6, 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "'Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment.'" *Pacheco v. Corrections Corp. of Am.*, 2015 WL 5156771 *3 (S.D. Miss. Sept. 2, 2015) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *see also Battle v. Jones*, 09-cv-1446, 2010 WL 545392, at *2 (W.D. La. Feb. 11, 2010) ("A plaintiff's disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation.") (citing *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir.1985)).

To prove deliberate indifference, there must be evidence that the medical staff "refused to treat [Mr. Vanwagner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."

8

*Id.* (quoting *Gobert*, 463 F.3d at 346); *see also McManis v. Olive Branch Police Dept.*, 2006 WL 212223 *1 (N.D. Miss. Jan. 25, 2006); (*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1991)). "Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *McManis*, 2006 WL 212223 at *1 (quoting *Farmer*, 511 U.S. at 838). "Plaintiff's dissatisfaction and disagreement with [medical staff's] treatment of him does not establish a constitutional violation." *Walker v. Caskey*, 2012 WL 2609111, *2 (S.D. Miss. July 5, 2012) (citing *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)).

Plaintiff's medical records show that Plaintiff received continuous, on-going treatment for his Hepatitis C condition. *See generally* Ex. B. In response to his Hepatitis C diagnosis, medical staff immediately provided treatment by performing follow-up testing and placing Plaintiff in Chronic Care to monitor his condition. *See generally* Ex. B. Plaintiff's labs show that his Fibrosis-4 score was last measured at 0.85. Ex. A at ¶8. This is significantly less than 2.5 which triggers an automatic referral to an off-site specialist. *Id.* at ¶¶7-8. Simply put, Plaintiff has not experienced any liver damage, nor have his enzyme levels indicated that he was at risk for substantial liver damage. This Court, and other courts in this district, have held that routine monitoring falls short of the deliberate indifference standard required to defeat summary judgment. *See Davis v. Turner*, No. 4:18CV54-GHD-DAS, 2019 WL 2425678, at *3 (N.D. Miss. June 10, 2019) ("The fact that [Plaintiff] desires additional [Hepatitis C] treatment is insufficient to raise an issue of material fact on a claim of deliberate indifference."); *Spiers v. Perry*, No. 1:17CV281-

RHW, 2019 WL 2373199, at *2 (S.D. Miss. June 5, 2019) (holding that providing routine monitoring to Plaintiff does not constitute deliberate indifference).

It is clear that Nurse Practitioner Brown, nor any medical professional at MSP, has knowingly disregarded an excessive risk to Plaintiff's health. Plaintiff has been treated and evaluated by the medical staff dozens of times, even had a referral to a GI specialist, and there is no evidence that his condition has worsened. His dissatisfaction and disagreement with the medical staff's decision to monitor his condition through Chronic Care does not establish a constitutional violation. *See Walker*, 2012 WL 2609111 at *2; *Norton*, 122 F.3d at 292; *see also McCray v. Miss. Dep't of Corrections*, 2018 WL 2269914, at *3-4 (N.D. Miss. May 17, 2018) (summary judgment appropriate where inmate's medical records demonstrated an ongoing course of treatment via monitoring and treatment of Hepatitis C condition through chronic care services). Accordingly, Nurse Practitioner Brown is entitled to summary judgment.

## CONCLUSION

There is no dispute that Plaintiff failed to exhaust his administrative remedies. Furthermore, the medical records make clear that Plaintiff has received continuous, ongoing medical treatment for his Hepatitis C condition. Accordingly, the Court should grant summary judgment in Nurse Practitioner Brown's favor, dismissing with prejudice all claims against Nurse Practitioner Brown.

Respectfully submitted, September 4, 2019.

      /s/Michael C. Williams
Michael J. Bentley (MSB# 102631)
Molly M. Walker (MSB# 100689)
Michael C. Williams (MSB# 104537)
mbentley@bradley.com
mmwalker@bradley.com
mcwilliams@bradley.com

...

*ATTORNEYS FOR DEFENDANT NURSE PRACTITIONERANGELA BROWN*

<u>OF COUNSEL</u>
Bradley Arant Boult Cummings, LLP
One Jackson Place
188 East Capitol Street, Suite 1000
PO Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 4, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and mailed via U.S. Mail, postage prepaid to:

Jerry Vanwagner, #161751
M.S.P. Unit 30 C. Bldg.
P.O. Box 1060
Parchman, MS 38738

*Pro Se Plaintiff*

      */s/ Michael C. Williams*
      OF COUNSEL