**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**JERRY VANWAGNER** **PLAINTIFF**

**VS.** **CIVIL ACTION NO. 4:18-CV-150-GHD-RP**

**M.S.P. MEDICAL DIRECTOR C. FAULKS, et al.** **DEFENDANTS**

**DEFENDANT'S MEMORANDUM OF AUTHORITIES
IN SUPOPRT OF THEIR MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant, Dr. Gloria Perry, by and through counsel and submits her Memorandum of Authorities in Support of Her Motion for Summary Judgment, and in support thereof, would show unto the Court as follows:

## I. INTRODUCTION & FACTUAL BACKGROUND

At the time of filing his Complaint, on July 16, 2018, Plaintiff was a convicted inmate in the custody of the Mississippi Department of Corrections ("MDOC") incarcerated at the Mississippi State Penitentiary ("Parchman") at Parchman, Mississippi. *Compl*., [1] at 1 (CM/ECF Pagination). Plaintiff claims that in 2012 while in the custody of MDOC he contracted Hepatitis C from unsanitary barbering practices. *Am. Compl*., [24] at 1-2. He claims that he has received inadequate medical treatment for his condition. Additionally, Plaintiff claims that he is being retaliated against. Specifically, Plaintiff claims that the same day a process order was entered in this matter (February 14, 2019), Plaintiff was moved from a bottom bunk profile to a top bunk profile, notwithstanding a medical order to the contrary. [24] at 6.

In addition to seeking injunctive relief in the form of medical treatment, Plaintiff seeks $16,000,000.00 in compensatory damages, nominal damages, and punitive damages. [1] at 5; [24] at 7.

Plaintiff's claim for allegedly contracting Hepatitis C from unsanitary barbering practices is barred by the statute of limitations. Plaintiff's claim for damages against the moving Defendant, in her official capacity, is due to be dismissed based on sovereign immunity and the fact that she is not amenable to suit under Section 1983. Plaintiff is not entitled to any injunctive relief from Dr. Perry as he cannot show an ongoing constitutional violation that would make sovereign immunity inapplicable. Additionally, Defendant is entitled to summary judgment, in her individual capacity, based on qualified immunity as Plaintiff has been unable to establish any constitutional violation on her part, or that her actions were not objectively reasonable in light of clearly established law. Furthermore, Plaintiff cannot show that Dr. Perry participated in any alleged constitutional violation or implemented a policy so deficient that the policy itself was a repudiation of constitutional rights and was the moving force of the alleged constitutional violation. Finally, Plaintiff fails to establish a retaliation claim and Defendant is entitled to summary judgment as Plaintiff failed to properly exhaust his administrative remedies prior to bringing suit in this matter.

## LEGAL STANDARD

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

When qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Rather, the movant need only plead his good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id*. (internal quotation marks, citation, and emphasis omitted); see also *Gates v. Tex. Dep't of Protective & Regulatory*

*Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct"). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

**B. The Prison Litigation Reform Act**

Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the U.S.C.), applies and requires that this case be screened.

The PLRA provides that "the Court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see 28 U.S.C. § 1915(e)(2)(B).

A centerpiece of the PLRA's effort to "reduce the quantity and improve the quality of prisoner suits" is an "invigorated" exhaustion provision. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The PLRA provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C.§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Id*. at 93 (quoting *Porter*, 534 U.S. at 525). Proper exhaustion is required. A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84. And the grievance process must be exhausted "pre-filing." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The United States Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Additionally, the Court has interpreted § 1997e(a) as requiring exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S. Ct. 1819, 1825 n. 6, 149 L. Ed. 2d 958 (2001).

Exhaustion "is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). "[J]udges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*.

## II. ARGUMENT

Plaintiff's claim for allegedly contracting Hepatitis C from unsanitary barbering practices is barred by the statute of limitations. Plaintiff's claim for damages against the moving Defendant, in her official capacity, is due to be dismissed based on sovereign immunity and the fact that she is not amenable to suit under Section 1983. Plaintiff is not entitled to any injunctive relief from Dr. Perry as he cannot show an ongoing constitutional violation that would make sovereign immunity inapplicable. Additionally, Defendant is entitled to summary judgment, in her individual capacity, based on qualified immunity as Plaintiff has been unable to establish any constitutional violation on her part, or that her actions were not objectively reasonable in light of clearly established law. Furthermore, Plaintiff cannot show that Dr. Perry participated in any alleged constitutional violation or implemented a policy so deficient that the policy itself was a repudiation of constitutional rights and was the moving force of the alleged constitutional violation. Finally, Plaintiff fails to establish a retaliation claim and Defendant is entitled to summary judgment as Plaintiff failed to properly exhaust his administrative remedies prior to bringing suit in this matter.

### A. STATUTE OF LIMITATIONS

Plaintiff claims that in 2012 while in the custody of MDOC he contracted Hepatitis C from unsanitary barbering practices and has been positive for Hepatitis C since 2012. *Compl.*, [1] at 4; *Am. Compl.*, [24] at 1-2. Plaintiff filed his Complaint on July 16, 2018. *Compl.*, [1].

In a § 1983 action, a district court must apply the State's general statute of limitations for personal injury actions. See *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v. Okure*, 488 U.S. 235, 250 (1989). In Mississippi, that period is three years. See Miss. Code Ann. § 15-1-49; *James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990). The accrual period for an injury "begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Pitrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal citations and quotations omitted). Here, that accrual period began in 2012, but Plaintiff waited until July 2018 to bring this action. Accordingly, any claim Plaintiff might have once had that he contacted a disease through MDOC's unsanitary barbering practices is barred by the statute of limitations. This claim is due to be dismissed.

**B. SOVEREIGN IMMUNITY**

Plaintiff's claim for damages against Dr. Perry, in her official capacity, is due to be dismissed because the Eleventh Amendment prohibits actions for damages against a state actor without the state's consent. *Brooks v. George County, Mississippi*, 84 F.3d 157, 168 (5th Cir. 1996). Sovereign Immunity extends to any state agency or entity deemed to be "an arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir.2002).

It is well-established that the Mississippi Department of Corrections is an arm of the State of Mississippi and is thus cloaked with the State's Eleventh Amendment immunity from suit. See *Williams v. Mississippi Dept. of Corrections*, 2012 WL 2052101 at * 1–2 (S.D. Miss. 2012) ("MDOC is considered an arm of the State of Mississippi" and is

immune under the Eleventh Amendment); *Dandridge v. Mississippi*, 2009 WL 4940105, at 7 (S.D. Miss. 2009) (same). Since MDOC is an arm of the state, its officers and employees are officers and employees of the state, and are similarly entitled to sovereign immunity from monetary damages in their official capacities. See *Am. Bank and Trust Co. v. Dent*, 982 F.2d 917, 921 (5th Cir.1993) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("a suit against a state official in his or her official capacity... is no different from a suit against the State itself.")). Thus, moving Defendant, in her official capacity, has immunity against Plaintiff's claims for monetary damages against her in her official capacity under Section 1983.

A single exception exists for suits against state officials in their official capacities for prospective injunctive relief only. In *Ex parte Young*, the Supreme Court recognized a narrow exception to Eleventh Amendment immunity which allows a state official to be sued in his or her official capacity for injunctive relief. 209 U.S. 123, 159–160 (1908). "This exception strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). A state official can be sued in his or her official capacity for injunctive relief under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985) (citing *Ex parte Young*, 209 U.S. at 159–160). One of the requirements for the applicability of *Ex Parte Young*, however, is that a complaint must allege that the defendant is violating federal law, not simply that the defendant has done so. See *Green v. Mansour*, 474 U.S.

64, 71–73, 106 S.Ct. 423, 427–29, 88 L.Ed.2d 371 (1985). Here, as discussed more fully below, Plaintiff cannot show an ongoing violation of ongoing federal law on the part of Dr. Perry.

In addition to being barred by Eleventh Amendment immunity, Plaintiff's federal claims are improper as Dr. Perry, in her official capacity, is not a party that can be sued under 42 U.S.C. § 1983. The United States Supreme Court has succinctly held that the State, arms of the State and state officials sued in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). As mentioned, this holding likewise applies to "any governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Id*. at 70. Thus, as a matter of statutory interpretation, Dr. Perry, in her official capacity, is not amenable to suit under § 1983 in federal court.

**C. QUALIFIED IMMUNITY**

Dr. Gloria Perry is also entitled to qualified immunity in this matter. Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability by qualified immunity." *Morris v. Dillard Dept. Stores, Inc*., 277 F.3d 743, 753 (5th Cir. 2001). A law enforcement officer is entitled to the cloak of qualified immunity unless it is shown that "he violated a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994).

Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In assessing a claim of qualified immunity, courts apply a two part analysis. The

threshold question is "whether Plaintiff's allegations establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194 (2001); see also *Pearson v. Callahan*, 555 U.S. 223 (2009)(holding that "order of battle" outlined in *Saucier* is not mandatory in every instance). However, "if a violation could be made out, the next sequential step is to ask whether the right was clearly established." *Id.* at 201. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202.

Plaintiff has not demonstrated a violation of a clearly established law against the moving Dr. Perry. "A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' " *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 2085, 179 L.Ed. 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed. 2d 523 (1987) ). To find that the law was clearly established, "[the court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (brackets and internal quotation marks omitted) (quoting *al–Kidd*, 563 U.S. at 741, 131 S.Ct. 2074). That does not mean that there must be a case "directly on point, but existing precedent must have

placed the statutory or constitutional question beyond debate." *Al–Kidd*, 563 U.S. at 741, 131 S.Ct. 2074.

**1. Inadequate medical care**

To state a constitutional claim for denial of adequate medical care, a plaintiff must demonstrate that the defendant was deliberately indifferent to plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Constitution guarantee prisoners "only adequate, not optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845, at *4 (E.D. La. Apr. 4, 2012), citing *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). An allegation of malpractice or mere negligence is insufficient to state a claim. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). Moreover, the fact that a prisoner disagrees with the type of medical treatment does not constitute a constitutional deprivation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). A delay in medical care may, under certain circumstances, state a claim for constitutionally inadequate medical care. See *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Id.* at 195. However, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Disagreements about whether an inmate should be referred to a

specialist as part of ongoing treatment do not constitute deliberate indifference. See *Alfred v. Texas Dep't of Criminal Justice*, No. 03-40313, 2003 WL 22682118, at *1 (5th Cir. Nov.13, 2003); *Hickman v. Moya*, No. 98-50841, 1999 WL 346987, at *1 (5th Cir. May 21, 1999).

Here, the record evidence in this matter, as more fully outlined in Nurse Practitioner Angela Brown's Memorandum in Support of Motion for Summary Judgment, clearly indicates that Plaintiff is receiving chronic care treatment for his Hepatitis C diagnosis, which includes monitoring of his liver enzyme levels and exams to check for signs of disease. See, *Memorandum in Support of Motion for Summary Judgment*, [56] at 2-3, 9; *A. Brown Decl*. [55-1]; *Medical Records* [55-2]. Given the continuous and on-going treatment Plaintiff is receiving, including outside medical evaluation, it is clear Plaintiff is unable to show that Dr. Perry, or any Defendant in this case, acted with deliberate indifference to a serious medical need.

**2. Retaliation**

Plaintiff claims that he is being retaliated against in that he claims the same day a process order was entered in this matter (February 14, 2019), Plaintiff was moved from a bottom bunk profile to a top bunk profile. [24] at 6. Notably, Plaintiff does not allege that Dr. Perry was involved in any form or fashion in denying him a particular bunk. *Id*. Also of note is the fact that the document relied upon by Plaintiff to show he was entitled to a particular bunk was not issued until a week after he claims he was denied a bottom bunk, or on February 22, 2019. See, [24] at 24.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. See *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). It is clearly established that "[f]iling grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017) (quoting *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009)) (internal quotation marks omitted). Retaliation, however, is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

"To establish retaliation, a prisoner must show '(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" *Joseph v. Dykes*, 368 F. App'x 511, 513 (5th Cir. 2010) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must show more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id*. In other words, a successful claim of retaliation requires a showing that, but for some

retaliatory motive, the complained of adverse incident would not have occurred. *Id*. Moreover, the Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 Fed.Appx. 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Thus, such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*.

First, Plaintiff does not allege that Dr. Perry was involved in any way in denying him a particular bunk. Next, Plaintiff cannot show that the move from a bottom bunk profile to a top bunk profile is such that it would deter a person of ordinary firmness from further exercising his constitutional rights. See *Morris*, 449 F.3d at 684-85, 686. Even if Plaintiff's bunk assignment constituted a qualifying adverse retaliatory act, Plaintiff cannot demonstrate any intent on the part of Dr. Perry to retaliate against him for exercising his constitutional rights as temporal proximity alone is insufficient to sustain a claim for retaliation. See *Gonzalez v. Sarabia*, 720 F. App'x 213, 214 (5th Cir. 2018).

More significantly, by Plaintiff's own admission, he did not exhaust his available administrative remedies prior to bringing this claim. Plaintiff alleges that he submitted an ARP on February 26, 2019, but that had not yet received a response regarding the

same. [24] at 6-7; 28-35. Plaintiff filed his motion to amend fourteen (14) days later on March 12, 2019.

While exhaustion is not a pleading requirement that plaintiffs must satisfy at the outset of litigation, "a court can dismiss a case . . . for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust." *Carbe v. Lappin*, 492 F.3d 325 (5th Cir. 2007); *see also Dillon v. Rogers*, 596 F.3d 260, 272 n.3 (5th Cir. 2010) (explaining old standard of dismissal for pleadings that did not sufficiently allege exhaustion is no longer appropriate "unless failure to exhaust is apparent on the face of a plaintiff's complaint" and citing *Lappin*). Here, Plaintiff has pled that he failed to exhaust his claim relating to his bunk prior to amending his complaint, and Dr. Perry is entitled to a dismissal of this issue.

Assuming, only for the sake of argument, that Dr. Perry did violate a clearly established constitutional right, the court must then consider whether his actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir.2004) (citations omitted). Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir.2008). The unlawfulness of the Defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the Defendant's exact act have

been illegal. *Id*. at 236-37. An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In essence, a Plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994). *Brown v. Callahan,* 623 F.3d 249, 253 (C.A.5 (Tex.),2010).

What is important about the standard of conduct to determine qualified immunity is that it embodies "reasonableness." That is to say, "qualified immunity affords 'ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* at 384. (*See also Malley v. Briggs*,475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1985)(holding that if officers of reasonable competence could disagree on the issue, immunity should be recognized); *Anderson v. Creighton* , 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987). It is well settled in the Fifth Circuit that a defendant's acts are deemed to be "objectively reasonable" unless all reasonable officials in the defendant's circumstances would have known that the conduct at issue violated clearly established law. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001). "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Pasco v. Knoblauch*, 566 F.3d 572, 578-579 (5th Cir.2009) citing *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir.1997).

Here Plaintiff cannot demonstrate that Dr. Perry has acted in an objectively unreasonable manner, as he is a chronic care patient receiving continuous treatment,

including outside evaluation, thus she is entitled to qualified immunity and dismissal of the claims against her.

To the extent Plaintiff is trying to claim that Dr. Perry should be held liable simply due to a supervisory role with MDOC, such a claim also fails. To prevail on a supervisory liability claim against Dr. Perry, Plaintiff must show that she, as a supervisory official, acted, or failed to act, with deliberate indifference to violations of his constitutional rights committed by subordinates. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). A supervisory official may be held liable under section 1983 only if she (1) affirmatively participated in the acts that caused the constitutional deprivation, or (2) implemented unconstitutional policies that causally resulted in the constitutional deprivation. *Id*. That is, plaintiff must show that Dr. Perry "implement[ed] a policy so deficient that the policy itself [was] a repudiation of constitutional rights and [was] the moving force of the constitutional violation." *Cozzo v. Tangipahoa Parish Council – President Government*, 279 F.3d 273, 289 (5th Cir. 2002). No such showing can be made by Plaintiff here, and his claims fail.

## III. CONCLUSION

For all of the reasons outlined hereinabove, as well as in their Motion for Summary Judgment, Dr. Perry is entitled to summary judgment in this matter and a dismissal of the claims against her.

**DATE: SEPTEMBER 19, 2019**

**GLORIA PERRY,** ***Defendant***

**JIM HOOD, ATTORNEY GENERAL**
**STATE OF MISSISSIPPI**

BY: */s/ J. Chadwick Williams*

J. CHADWICK WILLIAMS (MSB #102158)
Office of the Attorney General
Civil Litigation Division
Post Office Box 220
Jackson, Mississippi 39205
Email: cwill@ago.state.ms.us
Telephone: (601) 359-3680
Facsimile: (601) 359-2003

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the ECF system which will give notice to all counsel of record, and that I have this day caused to be mailed, via United States Postal Service, first class postage prepaid, a true and correct copy of the foregoing document in the above-styled and numbered cause to the following non-ECF participant:

Jerry VanWagner
161751
MSP Unit 30 C Bldg.
Parchman, MS 38738

This the 19th day of September, 2019.

*/s/ J. Chadwick Williams*