IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JERRY VANWAGNER                                                                            PLAINTIFF

v.                                                                           No. 4:18CV150-GHD-RP

M.S.P. MEDICAL DIRECTOR C. FAULKS, ET AL.                                                  DEFENDANT

MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Jerry VanWagner, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants have denied him adequate medical care for his infection with Hepatitis C and have retaliated against him for seeking other treatment through the grievance process.

The defendants have made separate motions for summary judgment, and the plaintiff has responded to them. The matter is ripe for resolution. For the reasons set forth below, the defendants' motions for summary judgment will be granted, and judgment will be entered for the defendants in all respects.

**Factual Allegations**

Jerry VanWagner ("Plaintiff") is a post-conviction inmate currently housed at Central Mississippi Correctional Facility for aggravated DUI. Nurse Practitioner Brown serves as a nurse practitioner at Mississippi State Penitentiary ("MSP") and is employed by Centurion of Mississippi, LLC, a private company contracted by the Mississippi Department of Corrections ("MDOC") to

provide medical services for inmates located at MDOC prisons. Nurse Practitioner Angela Brown Decl. at ¶2, Exhibit A.[1] On July 16, 2018, VanWagner filed a Complaint under 42 U.S.C. § 1983 alleging inadequate treatment for his Hepatitis C condition. *See* Compl., [Doc. 1]. He later amended his Complaint to add Nurse Practitioner Brown, alleging that she refused to treat his Hepatitis C condition. Am. Compl., [Doc. 13] at pp. 5-6. He later clarified his claims at a *Spears* Hearing on January 22, 2019. Mr. VanWagner is proceeding in this action *in forma pauperis*.

VanWagner tested positive for Hepatitis C before Centurion became the medical contractor at MSP on July 1, 2015. *See* Exh. A, Brown Decl. at ¶¶3-5. VanWagner has been enrolled in Chronic Care treatment for his Hepatitis C diagnosis from the time Centurion began providing medical services at MSP. *Id.* at ¶5. While in Chronic Care, medical staff monitor VanWagner's liver enzyme levels with blood counts and exams to check for signs of disease including ascites (a build-up of fluid in the abdomen) and jaundice. Ex. A at ¶6. He has received chronic care services continuously during the relevant time period. *See e.g.*, VanWagner's Relevant Medical Excerpts, Exhibit B, at 770, 785, 813, 854, 908, 964, 1012, 1107, 1144, 1179, 1205, and 1236.

Mr. VanWagner has received continuous treatment for his Hepatitis C condition. *See generally* Ex. B. In response to the Hepatitis C diagnosis, medical staff began providing treatment by performing follow-up testing and placing him in Chronic Care to monitor his condition. *See generally* Ex. B. Lab reports show that his Fibrosis-4 score was last measured at 0.85, significantly less than 2.5, which triggers an automatic referral to an off-site specialist. Exh. A at ¶¶7-8. Thus far, Mr. VanWagner has not experienced any liver damage; nor have his enzyme levels shown that he was at

---

[1] The exhibits referenced in this memorandum opinion may be found attached to Defendant Brown's motion for summary judgment.

risk for substantial liver damage. This court and our sister court in the Southern District have held that routine monitoring does not meet the deliberate indifference standard. *See Davis v. Turner*, No. 4:18CV54-GHD-DAS, 2019 WL 2425678, at *3 (N.D. Miss. June 10, 2019) ("The fact that [Plaintiff] desires additional [Hepatitis C] treatment is insufficient to raise an issue of material fact on a claim of deliberate indifference."); *Spiers v. Perry*, No. 1:17CV281- RHW, 2019 WL 2373199, at *2 (S.D. Miss. June 5, 2019) (providing routine monitoring does not constitute deliberate indifference).

More recently, in addition to receiving a gastroenterologist consult to evaluate his candidacy for further treatment, Mr. VanWagner received an esophagogastroduodenoscopy ("EGD") on August 15, 2019—a scope procedure that examines the esophagus, stomach, and first portion of the duodenum (small intestine). Ex. A at ¶10. Doctors conducted these procedures to monitor the progression of Mr. VanWagner's condition and determine if further, more aggressive, treatment is needed.

Providing Chronic Care services is the standard form of treatment for Hepatitis C patients while the patient's enzyme levels remain under the appropriate threshold. Ex. A at ¶11. The appropriate "threshold" is determined by the patient's Fibrosis-4 score. *Id.* at ¶7. The Fibrosis-4 score is a non-invasive testing method to measure scarring of the liver. *Id.* Once a patient's score approaches or exceeds 2.5, he is automatically referred to a specialist for evaluation of treatment with anti-viral medications. *Id.* Mr. VanWagner's levels have not reached the necessary threshold for referral, as his Fibrosis-4 score most recently registered at 0.85. *Id.* at ¶8. His enzyme levels have not shown that his condition has worsened or that he has experienced any liver damage. *Id.* at ¶9.

## ARP MSP-18-0636

Mr. VanWagner filed a single grievance (ARP MSP-18-0636) related to Hepatitis C treatment on May 8, 2018, complaining that the Medical Director of MSP was denying him treatment of his

Hepatitis C condition. *See* Plaintiff's ARP File, Exhibit C, at p. 3. For relief, he requested more extensive medical treatment, money damages, and for prison staff not to retaliate against him for filing a grievance. *Id.* The grievance was rejected on May 11, 2018, the stated reason being that the form of "[r]elief is beyond the power of the Administrative Remedy Program to grant." Doc. 81-2 at 59.

The plaintiff did not name Nurse Practitioner Brown, nor did he allege any facts similar to the allegations against her in his Amended Complaint. *Id.* Instead, he identified the MSP Medical Director and discussed only the actions and inactions of the medical director. *Id.* Mr. VanWagner did not submit a second grievance prior to filing suit or amending his Complaint. *See* Exh. C.

## Exhaustion of Administrative Remedies

The documents the parties have provided reveal that, as to his claim of denial of adequate medical care, the plaintiff exhausted the prison grievance process before filing the instant suit. However, the plaintiff did not exhaust his administrative remedies as to his claim of retaliation.

Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones*, 549 U.S. at 203.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Id.*; see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)(under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether

litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.* at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000). On September 19, 2010, the ARP process was changed from three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether or not to accept it into the ARP process. *Id.* The screening phase

operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra.* Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Howard, supra.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id.* Issuance of the Second Step Response is the only way to complete the

grievance process. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

Mr. VanWagner did not exhaust his administrative remedies as to his claim of retaliation. As such, the defendants' motion for summary judgment will be granted as to his issue, and it will be dismissed without prejudice.

The issue of exhaustion regarding his medical treatment is a bit more complex. It would appear at first blush that Mr. VanWagner did not exhaust the grievance process because MDOC responded to the grievance by rejecting it. Normally, a rejection of a grievance does not operate to exhaust the process, but in this instance, it appears to do so. The grievance was rejected because it allegedly sought "[r]elief [that] is beyond the power of the Administrative Remedy Program to grant." Doc. 81-2 at 59. Two of the forms of relief are arguably outside the power of the grievance program to grant, namely that VanWagner not face retaliation for seeking relief – and that he receive monetary compensation. However, he also requested additional treatment for Hepatitis C. If an inmate alleging denial of medical care during the grievance process cannot request monetary compensation from the prison (which is understandable) *or additional medical treatment*, it is difficult to imagine what relief he might request. In this case, the grievance process is unavailable to Mr. VanWagner as to his claim of denial of medical care, and he may proceed with this claim.[2]

**Denial of Medical Treatment**

---

[2] Mr. VanWagner did not name Nurse Brown in his grievance; however, he did generally complain about lack of medical care. For the purposes of the instant memorandum opinion regarding summary judgment, the court will consider that he has exhausted the grievance process as to Nurse Brown.

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment ... whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care...." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

As discussed above, Mr. VanWagner's Hepatitis C condition has been monitored and treated continuously during the times relevant to this case. He would like more aggressive treatment, but until his Fibrosis-4 score rises to 2.5 or above, monitoring is the appropriate course of action. Should his enzyme levels reach that point, he will automatically be referred to a specialist for evaluation and treatment with antiviral medications. Mr. VanWagner merely disagrees with the current course of his treatment (testing and monitoring), and that disagreement does not rise to the level of a constitutional violation. *Miller, supra.* These allegations are without merit, and judgment will be entered in favor of the defendants as to this claim.

## Statute of Limitations

A federal court borrows the forum state's general or residual personal injury limitations period. *Owens v. Okure*, 488 U.S. 235, 249 (1989); *Gartrell v. Gaylor*, 981 F.2d 254 (5th Cir. 1993). In Mississippi, that statute is MISS. CODE ANN. § 15-1-49, which allows a litigant only three years to file such an action, and the statute begins to run "at the moment the plaintiff becomes aware he has suffered an injury or has sufficient information to know he has been injured." *Russel v. Board of*

*Trustees of Firemen, etc.*, 968 F.2d 489 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1266 (1993) (citations omitted). The plaintiff filed the instant case on July 16, 2018, and he signed his complaint on May 28, 2018. Thus, any claims arising before May 28, 2015, are barred by the three-year limitations period. As such, his claim regarding contracting the disease in 2012 must be dismissed as barred by the relevant statute of limitations.

## No Evidence of Retaliation

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id.* The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Mr. VanWagner must prove that he engaged in constitutionally protected activity (seeking redress for grievances), faced significant adverse consequences, and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.* The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship,

reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988). Prisoners routinely file grievances against prison staff on an ongoing basis, for any number of reasons. As such, it is not uncommon for a prisoner to file a grievance, then receive a Rule Violation Report (or experience some other adverse act) sometime thereafter. Thus, to avoid turning nearly every charge of prison rule violations against a prisoner into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

In this case, Mr. VanWagner alleges that on February 14, 2019, the day a process order was issued in this case, he was moved from a bottom bunk to a top bunk, even though he had a profile that required his placement in a bottom bunk. However, the document Mr. VanWagner proffers to show that he was entitled to a bottom bunk assignment was not issued until a week *after* he was allegedly denied a bottom bunk. Doc. 24 at 24. Thus, it appears that he was not entitled to a bottom bunk at the time he was assigned a top bunk. Further, he has not alleged any facts tending to show that the remaining defendants had any part in the decision to assign him a top bunk. Finally, as set forth above, Mr. VanWagner did not exhaust the grievance process as to his retaliation claim before filing the instant suit. For these reasons, the defendants' motion

for summary judgment regarding the plaintiff's claim of retaliation will be granted, and judgment will be entered in favor of the defendants as to this claim.

## Other Pending Motions

Several of the plaintiff's motions are currently pending in this case: a motion [65] to compel discovery, a motion [90] for preliminary injunction or a temporary restraining order, a motion [92] to appoint counsel, a motion [93] to subpoena a witness, and a motion [94] to continue trial (to permit him to amend his complaint). In light of this memorandum opinion, these motions will be dismissed. In his motion [90] for preliminary injunction, the plaintiff seeks immediate testing and medical treatment for Hepatitis C; however, as set forth in the court's memorandum opinion, medical personnel have been conducting tests and monitoring the condition on an ongoing basis. That motion will be denied. In addition, the court denied the plaintiff's earlier request for appointment of counsel, and for the reasons set forth in its previous order, the present motion will also be denied. The other motions involve preparations in anticipation of a trial of this matter. As this matter will be dismissed on summary judgment, they will be dismissed as moot.

## Conclusion

For the reasons set forth above, the defendants' motions [55], [60] for summary judgment will be granted, and judgment will be entered for the defendants in all respects. In addition, the remaining motions [65], [90], [92], [93], [94] currently pending in this case will be dismissed. A final judgment consistent with this memorandum opinion will issue today.

SO ORDERED, this, the _25th_ day of February, 2020.

_/s/ Glen H. Davidson_
SENIOR UNITED STATES DISTRICT JUDGE